# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FINAL EXIT NETWORK, INC., FRAN SCHINDLER, and JANET GROSSMAN, | Case No. 18-cv-01025 (NEB/ECW) |
| Plaintiffs, | |
| v. | ORDER ON DEFENDANTS' MOTIONS TO DISMISS |
| KEITH ELLISON, in his official capacity as the Attorney General of Minnesota, JAMES C. BACKSTROM, in his official capacity as the Dakota County Attorney, and JOHN L. FOSSUM, in his official capacity as the Rice County Attorney, | |
| Defendants. | |

Plaintiff Final Exit Network, Inc. ("FEN") provides information, education, and emotional support to people who are considering whether to terminate irremediable suffering by ending their lives. [ECF No. 59 ("2d Am. Compl."), at ¶10.] The individual plaintiffs Fran Schindler ("Schindler") and Janet Grossman ("Grossman") are volunteer "Exit Guides" for FEN. (*Id.*, ¶¶17–18.) The Plaintiffs seek a declaratory injunction against defendants Keith Ellison in his official capacity as the Minnesota Attorney General[1]

---

[1] On January 7, 2019, counsel for the Attorney General informed the Court that pursuant to Fed. R. Civ. P. 25(d), Keith Ellison, Attorney General of Minnesota, is substituted for Lori Swanson as the proper defendant in this action. [ECF No. 60.]

("Attorney General"), James C. Backstrom in his official capacity as the Dakota County Attorney ("Backstrom"), and John L. Fossum in his official capacity as the Rice County Attorney ("Fossum"), that Minnesota Statute § 609.215, subd. 1 is unconstitutional on its face "to the extent it ... makes a crime of First Amendment-protected speech in the absence of any physical assistance." (*Id.*, ¶2.)

This matter is before the Court on the Defendants' motions to dismiss. [ECF Nos. 22, 34, and 42.] Prior to the hearing on these motions, the Plaintiffs informed the Court that the parties agreed to strike portions of the Amended Complaint to correct a misstatement of fact. [ECF No. 56.] At the hearing on November 20, 2018, the parties agreed that the Plaintiffs would file the Second Amended Complaint, and that the arguments presented would apply to the yet-to-be-filed Second Amended Complaint. Thus, per the parties' agreement, this Order applies to the Second Amended Complaint filed on December 4, 2018 [ECF No. 59 (2d Am. Compl.)]. *See Cartier v. Wells Fargo Bank, N.A.*, 547 Fed. App'x 800, 803–04 (8th Cir. 2013) (holding that the district court acted within its discretion to treat the motion to dismiss the original complaint as a motion to dismiss a later filed amended complaint where parties did not object). For the reasons that follow, the Defendants' motions to dismiss are granted.

# BACKGROUND

Minn. Stat. § 609.215, subd. 1 provides that that "[w]hoever intentionally advises, encourages, or assists another in taking the other's own life" may be sentenced to imprisonment, or to payment of a fine, or both. Minn. Stat. § 609.215, subd. 1.

In the Second Amended Complaint, the Plaintiffs describe the action as a "preenforcement challenge to the facial constitutionality of Minn. Stat. § 609.215, subd. 1 … under the First Amendment to the United States Constitution." (2d Am. Compl., ¶1.) Though this action is a preenforcement action, two state court criminal cases have arisen from enforcement of the challenged statute, and explanation of those cases is necessary for a full understanding of the arguments made by the parties in this federal case. First is *State v. Melchert-Dinkel*, 844 N.W.2d 13 (Minn. 2014), in which the Minnesota Supreme Court struck down portions of the statute under the First Amendment, but left portions of it intact. Second is *State v. Final Exit Network, Inc.*, 889 N.W.2d 296, 302 (Minn. Ct. App. 2016), in which the Minnesota Court of Appeals considered FEN's constitutional challenge to certain remaining portions of the statute and followed the *Melchert-Dinkel* precedent.

***State v. Melchert-Dinkel.*** In 2011, the Rice County Attorney successfully prosecuted William Melchert-Dinkel for violating the challenged statute. *Melchert-Dinkel*, 844 N.W.2d at 17–18. Posing as a depressed and suicidal young female nurse, Melchert-Dinkel responded to posts on suicide websites, feigning caring and understanding to win

the trust of victims while encouraging them to hang themselves, while also attempting to persuade them to allow him to watch the hangings via webcam. *Id.* at 16. Melchert-Dinkel was tried in the Rice County District Court and convicted on two counts of aiding suicide under Minn. Stat. § 609.215, subd. 1. *Id.* at 17. The district court specifically found that Melchert-Dinkel "'intentionally *advised* and *encouraged'* [two victims] to take their own lives, concluding that the speech at issue fell outside the protections of the First Amendment." *Id.* at 17–18 (emphasis in original). On appeal, Melchert-Dinkel argued that the challenged statute violates the First Amendment on its face, and the Minnesota Court of Appeals held that the statute prohibits speech that is unprotected by the First Amendment. *Id.* at 18 (citing *State v. Melchert-Dinkel*, 816 N.W.2d 703, 714 (Minn. Ct. App. 2012)). The Minnesota Supreme Court upheld the "assists" portion of the statute, even if "assists" consists only of speech. *See id.* at 22–23. In upholding the "assists" prohibition as constitutional, the Minnesota Supreme Court interpreted "assists" to include "speech or conduct that provides another person with what is needed for the person to commit suicide." *Id.* at 23. The Court explained, "[t]his signifies a level of involvement in the suicide beyond merely expressing a moral viewpoint or providing general comfort or support. Rather, 'assist,' by its plain meaning, involves enabling the person to commit suicide." *Id.* "While enablement perhaps most obviously occurs in the context of physical assistance, speech alone may also enable a person to commit suicide. Here, we need only

note that speech instructing another on suicide methods falls within the ambit of constitutional limitations on speech that assists another in committing suicide." *Id*.

> Prohibiting only speech that assists suicide, combined with the statutory limitation that such enablement must be targeted at a specific individual, narrows the reach to only the most direct, causal links between speech and the suicide. We thus conclude that the proscription against "assist[ing]" another in taking the other's own life is narrowly drawn to serve the State's compelling interest in preserving human life. We therefore reject Melchert-Dinkel's argument that the statutory prohibition against assisting another in committing suicide facially violates the First Amendment.

*Id.*

The Minnesota Supreme Court then analyzed the prohibition against "advis[ing]" and "encourag[ing]" another to commit suicide. *Id*. at 23–24. Concluding that "[u]nlike the definition of 'assist,' nothing in the definitions of 'advise' or 'encourage' requires a direct, causal connection to a suicide," the Court determined that the terms do not survive strict scrutiny. *Id*. at 23–25. The Court thus severed and excised the portions of Minn. Stat. § 609.215 that pertain to advising or encouraging, but left intact the "assist[ing]" portions of the statute. *Id*.

**State v. Final Exit Network, Inc.** In 2015, the Dakota County Attorney successfully prosecuted FEN as an organization for violating the challenged statute ("*FEN* state action"). 889 N.W.2d at 302. There, a Final Exit "first responder" provided Final Exit members who wished to end their life with instructions on death by helium asphyxiation and the names and addresses of manufacturers who sell the hood used to commit suicide in that manner. *Id*. at 300. In the *FEN* state action, D.D., who suffered from chronic pain,

applied for membership and requested "exit services" from FEN in January 2007. *Id.* D.D. was approved for exit services in February 2007, and a few months later, the Final Exit medical director and D.D.'s Exit Guide flew to Minneapolis and drove to D.D.'s home. *Id.* at 300-01. The necessary equipment for helium asphyxiation was in D.D.'s living room, and neither the medical director nor the guide touched the equipment. When she was ready, D.D. placed the hood on her head and turned the valves to the helium tank. *Id.* D.D. then died, the medical director checked her pulse to ensure she had died, and the medical director and Exit Guide removed the hood from D.D., left her home, and disposed of the equipment in a dumpster. *Id.* FEN was convicted of assisting another in taking the other's own life in violation of Minn. Stat. § 609.215, subd. 1. *Id.* at 302. After conviction, FEN appealed, raising both facial and as-applied First Amendment freedom-of-speech challenges to the statute. *Id.* The Minnesota Court of Appeals noted that the Minnesota Supreme Court in *Melchert-Dinkel* "interpreted the term 'assists' as 'proscrib[ing] speech or conduct that provides another person with what is needed for the person to commit suicide' or 'enabl[ing] the person to commit suicide.'" *Id.* at 302 (quoting *Melchert-Dinkel*, 844 N.W.2d at 23). The Court of Appeals determined that the "assists" provision in the statute is not facially unconstitutional under *Melchert-Dinkel.*

> The Minnesota Supreme Court concluded in *Melchert-Dinkel* that the statute's "assists" prohibition is a content-based restriction and survives strict scrutiny under the First Amendment. 844 N.W.2d at 21–23. The court concluded that the government has a compelling interest in preserving human life and preventing suicide. *Id.* at 22 (citing *Washington v. Glucksberg*, 521 U.S. 702, 728–34 [] (1997)). The court further concluded that the statute

is narrowly tailed to effectuate this compelling interest. By its reference to assisting "another," the statute only reaches "targeted speech aimed at a specific individual." *Id.* at 22. In addition, "assists" further narrows the statute's reach by criminalizing only speech that "enable[s] a person to commit suicide" or "instruct[s] another on suicide methods." *Id.* at 23. For these reasons, the Minnesota Supreme Court concluded that the statutory prohibition on "only speech that assists suicide, combined with the statutory limitation that such enablement must be targeted at a specific individual," renders the statute narrowly tailored and linked to the state's compelling interest in the preservation of life. *Id*. The statute's "assists" provision thus survives strict scrutiny and Final Exit's facial challenge to the statute. *Id.*

*Final Exit Network*, 889 N.W.2d at 303.

The Court of Appeals also rejected FEN's as-applied challenge to the statute finding that the statute was constitutional as applied to the specific conduct of FEN's representatives as to D.D., *id*. at 307, and that the statute was narrowly tailored to reach a compelling governmental interest in the preservation of human life. *Id.* at 303–07. The court noted that FEN "was not convicted for speech 'tangential to the act of suicide.'" *Id.* at 307 (quoting *Melchert-Dinkel*, 844 N.W.2d at 23–24). Instead, FEN was convicted for "instructing [D.D.] on suicide methods," including its "preferred inhalation method," and then on the day of D.D.'s death, FEN's representatives observed her connect the tubing to the helium tanks, and would have explained to her how to hook it up properly had she not done so. *Id*. Further, the FEN representatives ensured D.D. had died, removed the equipment from her home, and disposed of it "to create the appearance of a natural death." *Id*. Thus, the Court of Appeals held, "[i]n the context of the specific circumstances presented in this case, the statute was applied to restrict [FEN's] speech

instructing D.D. on suicide methods." *Id.* (internal citation and quotation marks omitted). The Court of Appeals expressly provided that the statute does not prevent FEN "from expressing [its] ideas and messages in a number of other forums and ways." *Id.* (citation omitted). The Minnesota Supreme Court denied FEN's petition for review, and the United States Supreme Court denied FEN's petition for writ of certiorari. *See Final Exit Network, Inc. v. Minn.*, 138 S. Ct. 145 (2017).

***This federal action.*** Having lost the *FEN* state court action, this case, then, is FEN's challenge in federal court to the portions of the statute left intact by the Minnesota Supreme Court after *Melchert-Dinkel*. FEN's Second Amended Complaint describes the action as a "preenforcement challenge to the facial constitutionality" of the statute. (2d Am. Compl., ¶1.) "[A]s § 609.215, subd. 1 has been authoritatively interpreted under Minnesota law, the word 'assists' criminalizes not only conduct, but alternatively 'speech' that 'enables' a 'suicide.' The plaintiffs challenge the facial constitutionality of Minnesota law to the extent it therefore makes a crime of First Amendment-protected speech in the absence of any physical assistance." (*Id.*, ¶2.)

The Second Amended Complaint states that the Plaintiffs, both FEN and the individuals, suffer an ongoing, concrete, particularized injury "inasmuch as they desire and intend to violate the Minnesota Statute as they carry out the same policies, protocols, and practices apply [*sic*] in every other State in the Union, in reliance on their First Amendment-protected right to do so, and are threatened with arrest, prosecution and

punishment under Minnesota law for the exercise of their right to freedom of speech."

(*Id*., ¶6.) The Plaintiffs chose the Rice County Attorney and the Dakota County Attorney

as defendants (together, "County Attorney Defendants") because they prosecuted

Melchert-Dinkel and FEN in the cases described above. (*Id*., ¶7.) The Plaintiffs chose the

Attorney General as a defendant because "[t]here is no reason to believe the attorney

general would decline to exercise [his] discretionary ability to assist in a prosecution or

appeal under the Statute." (*Id*.)

The Second Amended Complaint is short on particulars as to the plans made, if

any, by FEN and the individual plaintiffs to "assist" a person's suicide and thus violate

the challenged statute. It states generally that "FEN provides information, education, and

emotional support to people who are considering whether to make an informed and

rational choice to terminate irremediable suffering." (*Id*., ¶10.) Further, it alleges that "[a]s

part of the Exit Guide program, the volunteers sometimes sit at a person's bedside at the

time of her or his death in the belief that few people wish to die alone." (*Id*., ¶11.)

As to Plaintiff Grossman, the Second Amended Complaint states that she is a

volunteer Exit Guide and that "FEN will probably contact Grossman about whether to

accept an Exit Guide assignment in Minnesota." (*Id*., ¶17.) It does not indicate what

specifically Grossman would do to assist a suicide in the event she accepts an assignment

in Minnesota. As to Plaintiff Schindler, the Second Amended Complaint is a bit more

specific, stating that Schindler is a volunteer Exit Guide and "has at least one ongoing

relationship with an Exit Guide client in Minnesota and plans to continue to serve this person." (*Id.*, ¶¶18, 19.) "She intends not to provide physical assistance or the means to the person in Minnesota, but she does intend to give information in violation of the Statute when the person is ready. Schindler is considering whether to arrange for this person to travel to her home in North Carolina in order to provide counseling without running the risk of prosecution under the Minnesota Statute." (*Id.*, ¶19.) The Complaint does not specify the speech that Schindler believes will be "in violation of the Statute." (*Id.*)

The Plaintiffs seek a declaration that Minn. Stat. § 609.215, subd. 1 is facially unconstitutional to the extent that it criminalizes speech that enables a suicide, and seek a permanent injunction barring the Defendants from enforcing this statute to the extent it criminalizes speech that enables a suicide. (*Id.*, at 6.)

Each of the Defendants filed a motion to dismiss, arguing that (1) the Plaintiffs lack standing to bring this action, (2) the Attorney General is not the proper defendant under the Eleventh Amendment, (3) the Plaintiffs' challenge to Minn. Stat. § 609.215, subd. 1 is barred by collateral estoppel, and (4) the Plaintiffs' facial challenge fails on the merits.[2] In addition, Fossum argues that (5) this action is not ripe for review and (6) the Court lacks subject matter jurisdiction based on the *Rooker–Feldman* doctrine. Backstrom argues that

---

[2] Backstrom incorporates by reference the bases for dismissal set forth by the Attorney General. [ECF No. 35, at 2 n.1.] Fossum incorporates by reference the bases for dismissal set forth by the Attorney General and Backstrom. [ECF No. 43, at 2 n.1.]

(7) the Plaintiffs fail to state an official-capacity § 1983 claim. For the reasons set forth below, the motions to dismiss are granted.

## ANALYSIS

### I. Rule 12(b)(6) Standard

When reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the nonmovant's favor. *Loeffler v. City of Anoka*, 893 F.3d 1082, 1084 (8th Cir. 2018). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570.

### II. Standing

The Defendants first argue that the Plaintiffs lack standing to challenge the constitutionality of Minn. Stat. § 609.215, subd. 1. Standing to sue is a jurisdictional requirement "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see* U.S. Const. art. III, § 2. The plaintiff bears the burden of establishing standing. *Spokeo*, 136 S. Ct. at 1547. When determining whether to dismiss a complaint for lack of standing, a court is to "constru[e] the allegations of the complaint, and the reasonable inferences drawn therefrom, most favorably to the

plaintiff." *Glickert v. Loop Trolley Transp. Dev. Dist.*, 792 F.3d 876, 880 (8th Cir. 2015) (citations and quotation marks omitted).

"[S]tanding is not dispensed in gross." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citations omitted). Rather, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id*. (citations omitted). "At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Id*. at 1651. In this case, there has been some confusion over whether the Plaintiffs raise facial challenge, a facial overbreadth challenge, or both.[3] The Court below addresses the Plaintiffs' standing to bring each type of challenge.

## A.     Standing to Bring Facial Challenge

The Second Amended Complaint states that it challenges the "facial constitutionality" of Minn. Stat. § 609.215, subd. 1 to the extent that it criminalizes speech that enables a suicide. (2d Am. Compl., ¶¶1–2); *see generally Ward v. Rock Against Racism*, 491 U.S. 781, 795–96 (1989) ("In evaluating a facial challenge to a state law, a federal court

---

[3] In their response briefs, the Plaintiffs maintain that they are asserting a facial overbreadth challenge of Minn. Stat. § 609.215, subd. 1. (*See, e.g.*, ECF No. 50 ("Pls.' Resp. Br.") at 17 ("The issue in this case is whether the Statute is facially unconstitutional *as overbroad* under the First Amendment.") (emphasis added).) They argue that they "need not prove [a facial challenge under] *Salerno*" but rather, the facial overbreadth challenge. (*Id*. at 27 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987) (facial challenge), and *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (facial overbreadth challenge).) These statements indicate that the Plaintiffs raise a facial overbreadth challenge, and not a facial challenge. But at the hearing, the Plaintiffs' counsel claimed that the Plaintiffs allege a facial challenge, and alternatively or in addition, a facial overbreadth challenge.

must ... consider any limiting construction that a state court or enforcement agency has proffered.") (citation omitted). "'Facial challenges are disfavored' because they 'often rest on speculation, [and] raise the risk of premature interpretation of statutes on the basis of factually barebones records.'" *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017) (quoting *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 685 (8th Cir. 2012)), *cert. denied*, 138 S. Ct. 986 (2018). To succeed on a facial challenge (as opposed to a facial overbreadth challenge), a "challenger must establish that no set of circumstances exists under which the [statute] would be valid," *Salerno*, 481 U.S. at 745, "or that the statute lacks any plainly legitimate sweep." *Phelps-Roper*, 697 F.3d at 685 (citation and quotation marks omitted).

The Defendants assert that the Plaintiffs lack standing to bring a facial challenge to the statute – often referenced as Article III standing. *See Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 799 (8th Cir. 2006) (Article III standing to bring a First Amendment free speech challenge is "an inescapable threshold question"); *Mosby v. Ligon*, 418 F.3d 927, 932–33 (8th Cir. 2005) (litigants must satisfy "normal requirements" of Article III standing even when bringing facial challenges). To have Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citations omitted). As the party invoking federal jurisdiction, the Plaintiffs bear the burden of establishing these elements. *See Lujan*

*v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The parties contest the first two elements of Article III standing: (1) an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant.[4]

### 1.    Injury in Fact

An alleged injury in fact must be "(a) concrete and particularized" and "(b) actual or imminent," as opposed to "conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted). Injury in fact for a First Amendment claim, however, is subject to a specific test:

> To establish injury in fact for a First Amendment challenge to a state statute, a plaintiff need not have been actually prosecuted or threatened with prosecution. Rather, the plaintiff needs only to establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute. Self-censorship can itself constitute injury in fact.

*281 Care Comm. v. Arneson ("281 Care Comm. I")*, 638 F.3d 621, 627 (8th Cir. 2011) (internal citations omitted). "The relevant inquiry is whether a party's decision to chill his speech in light of the challenged statute was 'objectively reasonable.'" *Id*. (citation omitted). "Reasonable chill exists when a plaintiff shows 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.'" *Id*. (citation omitted). "[T]he threat of

---

[4] The parties do not contest the third element of redressibility.

14

future enforcement" of a statute is "substantial" where "there is a history of past enforcement." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) ("*SBA List*")).

Here, the Second Amended Complaint alleges that "the plaintiffs are forced to choose between abandoning their First Amendment-protected right to advise people about their right to terminate irremediable suffering … and engaging in that speech and risking criminal prosecution" for violating Minn. Stat. § 609.215, subd. 1. (2d Am. Compl., ¶8.) FEN was prosecuted for violating this statute. (*See id.*, ¶12 (citing *Final Exit Network*, 889 N.W.2d 296).) Since then, FEN "advises its Exit Guides of the danger of providing Exit Guide Services in Minnesota. As volunteers, some of the Exit Guides decline to participate in the Exit Guide program in Minnesota." (*Id.*, ¶15.) The Second Amended Complaint also alleges that "FEN's case coordinators have observed indications that some Minnesotans have considered contacting FEN but did not because they have heard of Minnesota's criminalization of FEN's Exit Guide services. Others call and become discouraged to the point of not calling back when they are advised of the unique danger of providing Exit Guide services in Minnesota." (*Id.*, ¶16.) The Court finds that FEN's prior prosecution under the challenged statute, and the alleged chilling effect on FEN's volunteers, satisfy the injury in fact element as to FEN as an organizational plaintiff.

The Defendants bring further arguments challenging the standing of the two individual plaintiffs, who were added after the original Complaint. [*See* ECF Nos. 1, 20.] The Defendants argue that the Second Amended Complaint fails to establish any credible

threat of prosecution as to the two Exit Guides. "'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564 (citation omitted, emphasis in original). Indeed, "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Balogh v. Lombardi*, 816 F.3d 536, 542 (8th Cir. 2016) (citations and brackets omitted); *see 281 Care Comm. I*, 638 F.3d at 627 ("[S]elf-censorship based on mere allegations of a 'subjective' chill resulting from a statute is not enough to support standing, and 'persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.'") (citations omitted). According to the Plaintiffs, the Second Amended Complaint alleges a credible threat of future enforcement of Minn. Stat. § 609.215, subd. 1 because "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *SBA List*, 573 U.S. at 164 (citation omitted).

Individuals have been charged with violating the challenged statute in Rice County and Dakota County. (2d Am. Compl. ¶7); *see Melchert-Dinkel*, 844 N.W.2d 13 (charges brought by Rice County Attorney); *State v. Final Exit Network, Inc.*, Nos. A13-0563, 2013 WL 5418170, at *1–*2 (Minn. Ct. App. Sept. 30, 2013) (Dakota County Attorney charged two FEN Exit Guides). And the Defendants have not disavowed enforcement if the individual plaintiffs engage in similar conduct in the future. According to the

Plaintiffs, "there is every reason to think that similar speech in the future will result in similar proceedings." *SBA List*, 573 U.S. at 163.

Given that both individual Exit Guides and FEN as an organization have been prosecuted in the past for speech that the Plaintiffs are allegedly chilled from engaging in in the future, the Court will not treat FEN and the individual plaintiff Exit Guides differently for standing purposes. The individual plaintiff Exit Guides named here have more than "imaginary or speculative" fear of prosecution, have sufficiently alleged self-censorship such that the standing doctrine is met here by all Plaintiffs, not just FEN.[5] *281 Care Comm. I*, 638 F.3d at 627; *see SBA List*, 573 U.S. at 164; *cf. Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014) (finding standing based on plaintiffs' "legitimate fear of criminal penalties for failure to comply with" state disclosure laws where their "past enthusiastic participation in the political process" and membership in political organizations showed that, if not for the disclosure laws, they would again engage in political activism that implicated those laws).

_____

[5] Even if only FEN, and not the individual plaintiff Exit Guides, had standing, this Court would still have subject matter jurisdiction over the Second Amended Complaint. *See Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 986 (8th Cir. 2011) ("only one plaintiff need show standing to support our subject matter jurisdiction"); *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006) ("where one plaintiff establishes standing to sue, the standing of other plaintiffs is immaterial to jurisdiction").

## 2. Traceable Injury

Article III standing also "requires a showing that each defendant caused his injury and that an order of the court against each defendant could redress the injury." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017); *see Lujan*, 504 U.S. at 560 (a plaintiff must establish "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.") (citation, quotation marks and brackets omitted). "[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." *Calzone*, 866 F.3d at 869 (citing *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957–58 (8th Cir. 2015)). Whether a defendant possesses enforcement authority sufficient for standing purposes turns on whether he has "some connection with the enforcement of [the] state law." *Dig. Recognition Network*, 803 F.3d at 957 (citation and quotation marks omitted).

As to the County Attorney Defendants, this element is met. The Second Amended Complaint alleges that the Plaintiffs' injury is fairly traceable to the County Attorney Defendants because Backstrom and Fossum have prosecuted cases based solely on speech that enables a suicide. (2d Am. Compl., ¶7.) The parties do not dispute that the

Second Amended Complaint alleges injury traceable to Backstrom and Fossum, as they both possess the authority to enforce the challenged statute, and have done so in the past.

The Attorney General, however, presents a more difficult question. The Second Amended Complaint asserts standing because "[t]here is no reason to believe the attorney general would decline to exercise her discretionary ability to assist in a prosecution or appeal under the Statute." (*Id.*) The Attorney General argues that the Plaintiffs cannot show injury traceable to him because the Attorney General did not initiate or play any role in the County Attorney Defendants' prosecutions. The Attorney General relies on *Reproductive Health Services of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, in which the Eighth Circuit held that the plaintiff had "shown no threat of irreparable injury" by the Missouri attorney general where "neither the Governor nor any state trial court has directed the Attorney General to take action to enforce" the statute at issue there. 428 F.3d 1139, 1145 (8th Cir. 2005); *see also Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) (holding that plaintiff had no standing where "the only injuries [plaintiff] has alleged stem from a state court custody proceeding in which the [Alabama] Attorney General played no role. The Attorney General has taken no ... 'challenged action.'").

In response, the Plaintiffs argue in passing that their claims fall within the *Ex parte Young* exception to Eleventh Amendment immunity, under which a suit for injunctive or declaratory relief avoids sovereign immunity if the state official has some connection to

the enforcement of the challenged law. [ECF No. 50 ("Pls.' Resp. Br.") at 12]; *see Ex parte Young*, 209 U.S. 123, 157 (1908). Relying on *Reproductive Health Services*, the Attorney General argues that the Eighth Circuit has analyzed Eleventh Amendment immunity separately from that of traceable injury. 428 F.3d at 1145 (holding that attorney general fell within *Ex parte Young* exception to Eleventh Amendment immunity, but that the plaintiff showed no threat of irreparable injury by the attorney general because he had not been directed to enforce the statute). But *Reproductive Health Services* addressed the threat of irreparable injury in the context of a preliminary injunction, not standing. *See 281 Care Comm. I*, 638 F.3d at 633 (distinguishing *Reproductive Health Services'* preliminary injunction determination from its *Ex parte Young* inquiry, and holding "although the connection was not strong enough to support the issuance of a preliminary injunction against the attorney general—it was strong enough to bring the attorney general into the *Ex Parte Young* exception and make him a potentially proper defendant").

More recently, the Eighth Circuit has noted that "where state officials had 'some connection with the enforcement' of a state law for purposes of the *Ex Parte Young* doctrine, then the case or controversy requirement of Article III was satisfied." *Dig. Recognition Network*, 803 F.3d at 957 (citation omitted); *see Calzone*, 866 F.3d at 869–70 (noting the standing and *Ex parte Young* "inquiries are similar" in a suit for injunctive or declaratory relief against state officials).

The Attorney General maintains that the Amended Complaint contains no allegation that the Attorney General (1) has taken any action to enforce Minn. Stat. § 609.215, subd 1, (2) has been asked by any county attorney to take any action to enforce the statute, or (3) has threatened to enforce the statute. But whether the Attorney General possesses enforcement authority sufficient for standing purposes does not require those three things. Instead, it turns on whether the Attorney General has "some connection" with the enforcement of the statute. *Dig. Recognition Network*, 803 F.3d at 957. The Second Amended Complaint states that the County Attorney Defendants are vested with the authority to determine whether to prosecute a suspect under the challenged statute, and to initiate such prosecutions, and that the Attorney General "provides them with support and cooperation and conducts appeals from convictions under the Statute" and "is also authorized to serve as the stand-in prosecutor in any instance in which a county attorney should request such assistance." (2d Am. Compl. ¶5); *see* Minn. Stat. § 8.01 ("Upon request of the county attorney, the attorney general shall appear in court in such criminal cases as the attorney general deems proper."). Minn. Stat. § 609.215 also includes a civil enforcement provision. Minn. Stat. § 609.215, subd. 4(4) ("A cause of action for injunctive relief may be maintained against any person who is reasonably believed to be about to violate or who is in the course of violating this section by any person who is … a person authorized to prosecute or enforce the laws of this state"). The Eighth Circuit has found that similar allegations alleged a "three-fold connection" between the Attorney General

and a statute sufficient to make the Attorney General amenable to suit under the *Ex parte Young* exception. *281 Care Comm. I*, 638 F.3d at 632-33 (noting that "some connection" between the attorney general and the challenged statute "does not need to be primary authority to enforce the challenged law"). Because the Second Amended Complaint alleges that the Attorney General has "some connection" with the enforcement of Minn. Stat. § 609.215, subd. 1, the Attorney General possesses enforcement authority sufficient for standing purposes. For these same reasons, the Court finds that the *Ex parte Young* exception to Eleventh Amendment immunity applies at this stage of the litigation.[6]

### B.    Standing to Bring a Facial Overbreadth Challenge

In the context of the First Amendment, a statute may also be challenged as facially overbroad. The facial overbreadth doctrine "provides an avenue whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Josephine Havlak*, 864 F.3d at

---

[6] The Court notes that the *Ex parte Young* exception does not apply when the state official "has neither enforced nor threatened to enforce the statute challenged as unconstitutional," and that courts have applied Eleventh Amendment immunity where the official proffers evidence of his assurances not to enforce the challenged statute. *281 Care Comm. v. Arneson* ("*281 Care Comm. II*"), 766 F.3d 774, 797 (8th Cir. 2014) (finding immunity from suit where the attorney general proffered affidavit with assurances that the office would not take up its discretionary ability to assist in the prosecution of the statute at issue) (citations omitted). This case is not at that stage of litigation, marking a critical distinction between *281 Care Community I* and *281 Care Community II*. *Compare 281 Care Comm. I*, 638 F.3d at 626 (addressing motion to dismiss for lack of subject matter jurisdiction), *with 281 Care Comm. II*, 766 F.3d at 779 (addressing motion for summary judgment).

912 (citations and quotation marks omitted). Courts generally do not apply the "'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Id*. (citation omitted).

The Defendants maintain that the Plaintiffs lack standing to bring a facial overbreadth claim.[7] *See Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004) (affirming dismissal of First Amendment facial overbreadth claim "for lack of standing, and therefore lack of subject matter jurisdiction"). "[T]he facial overbreadth doctrine 'is a departure from traditional rules of standing,' such that a party whose own expressive conduct may be unprotected is allowed to assert the First Amendment rights of others not before the court...." *Id*. at 792 (citations omitted). "For a federal court to entertain a facial challenge pursuant to the First Amendment overbreadth doctrine, '[t]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the [c]ourt.'" *Josephine Havlak,* 864 F.3d at 912 (citing *Jacobsen v. Howard*, 109 F.3d 1268, 1274 (8th Cir. 1997) (quoting *Bd. of Airport Comm'rs of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987))).

---

[7] The Defendants first challenged the Plaintiffs' standing to bring a facial overbreadth claim in the Attorney General's reply brief. [ECF No. 57 at 4–6.] While courts typically do not consider new arguments raised in reply briefs, standing is a jurisdictional requirement, and "any party or the court may, at any time, raise the issue of subject matter jurisdiction." *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009) (citation omitted). Moreover, the Plaintiffs only raised the possibility of a facial overbreadth challenge in their response brief—the Second Amended Complaint does not mention such a challenge.

The Plaintiffs "bear[] the burden to demonstrate that [they have] standing to bring a facial overbreadth claim." *Id.* (citing *Klobuchar*, 381 F.3d at 791). They "must identify a significant difference between [their] claim that the statute is facially invalid on overbreadth grounds, and [their] claim that it is unconstitutional as applied to his particular activity." *Id.* (citations and brackets omitted). "It is inappropriate to entertain a facial overbreadth challenge when the plaintiff fails to adduce any evidence that third parties will be affected in any manner differently from herself." *Id.* (citations omitted).

The Defendants assert that the Plaintiffs lack standing to bring a facial overbreadth claim because they have not met their burden of identifying how Minn. Stat. § 609.215, subd. 1 affects third parties differently from them. The Court agrees. The Second Amended Complaint focuses on how Minn. Stat. § 609.215, subd. 1 affects the Plaintiffs. (*See, e.g.,* 2d Am. Compl., ¶13 ("FEN is therefore threatened with prosecution every time its volunteers talk with anyone in Minnesota about legal method of inducing their own death,"); *id.*, ¶14 ("FEN and its Exit Guides are subject to conviction under Minnesota's prohibition on speech that 'enables' a 'suicide'…").) To the extent the Second Amended Complaint references third parties, it does not assert that the statute affects them differently from the Plaintiffs. (*See, e.g., id.*, ¶14 ("FEN and its Exit Guides – or even a librarian or a bookstore sales clerk – may be convicted solely for informing a 'targeted' person where to find the same information himself or herself.").) As such, the Second

Amended Complaint fails to allege the Plaintiffs' standing to assert a facial overbreadth challenge to Minn. Stat. § 609.215, subd. 1.[8]

At the hearing on the instant motions, the Plaintiffs' counsel maintained that the Plaintiffs have standing to assert a facial challenge, and that an overbreadth challenge is just a subset of a facial challenge. But they offer no legal authority to support the position that their general facial challenge to the statute means they do not need to satisfy the standing requirements to bring a facial overbreadth challenge. Because the Plaintiffs fail to allege facts indicating that Minn. Stat. 609.215, subd. 1 affects third parties differently from them, they lack standing to bring a facial overbreadth claim. *See Josephine Havlak*, 864 F.3d at 912; *Harrington v. Strong*, No. 8:18CV383, 2019 WL 359992, at *13 (D. Neb. Jan. 29, 2019) (dismissing facial overbreadth claim for lack of standing where plaintiffs "made no attempt to allege any realistic scenarios in which [the statute] would 'compromise recognized First Amendment protections of parties not before the court.'" (citing *Josephine Havlak*, 864 F.3d at 912)). Thus, to the extent the Plaintiffs' challenge to the statute is based on the facial overbreadth challenge, it is dismissed for lack of jurisdiction due to the Plaintiffs' absence of standing. *See Josephine Havlak*, 864 F.3d at 912.

_____

[8] The Plaintiffs do not challenge the constitutionality of Minn. Stat. § 609.215, subd. 1, as applied to themselves. *Cf. Josephine Havlak*, 864 F.3d at 912 (finding no standing to bring facial overbreadth challenge because plaintiff "presents no allegedly unconstitutional scenarios affected by the Village ordinance beyond her own commercial photography," then considering a constitutional challenge of the ordinance's application to plaintiff). While the Plaintiffs' original complaint included an "as applied" challenge, they chose to omit this claim when they amended their complaint.

Thus, as set forth above, the Plaintiffs have no standing to bring a facial *overbreadth* challenge to Minn. Stat. § 609.215, subd. 1, but they do have standing to bring a facial challenge to the statute against the Defendants. Therefore, the Court considers further arguments regarding the facial challenge claim.

## III.    Ripeness

County Attorney Fossum argues that this Court lacks subject matter jurisdiction because the claims are not ripe for judicial review. A claim is not ripe for adjudication if the alleged injury "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *281 Care Comm. I*, 638 F.3d at 631 (citation omitted). Fossum contends that the claims are not ripe because the Plaintiffs have not been threatened with prosecution for violating the statute. Yet, as set forth above, the Second Amended Complaint alleges that Fossum and Backstrom have prosecuted violations of the challenged statute in the past. (2d Am. Compl., ¶7.) Neither Fossum nor Backstrom dispute that their counties plan to enforce the statute, or that such enforcement would cause injury to FEN. Moreover, as in *281 Care Committee I*, the alleged injury is not based solely on speculation about a particular future prosecution. "Rather, the injury is speech that has already been chilled and speech that will be chilled … because of the very existence of" the Minnesota Supreme Court's interpretation of Minn. Stat. § 609.215, subd. 1 in *Melchert-Dinkel*. *281 Care Committee I*, 638 F.3d at 631 (holding plaintiff's claim was ripe where the issue presented requires no further factual development, is largely a

legal question, and chills allegedly protected First Amendment expression). The Second Amended Complaint alleges that FEN and its Exit Guides engage in self-censorship as a result of the Minnesota Supreme Court's narrowing interpretation of the challenged statute. (*See, e.g.*, Compl., ¶13 ("FEN is therefore threatened with prosecution ever time its volunteers talk with anyone in Minnesota about legal methods of inducing their own death").) The Court therefore rejects Fossum's ripeness argument and finds that the claim is ripe for review.

## IV.     Rooker–Feldman Doctrine

Fossum also argues that the *Rooker–Feldman* doctrine precludes the Court from exercising jurisdiction in this action. The *Rooker–Feldman* doctrine "recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004) (citation omitted). The doctrine precludes district courts from obtaining jurisdiction over the case styled as a direct appeal, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923), as well as claims that are "inextricably intertwined" with state court decisions. *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 487 (1983). The Supreme Court has held that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Skinner v. Switzer*, 562 U.S. 521, 532–33 (2011). Where a federal plaintiff presents "some independent claim," even if that claim "denies a legal conclusion that a state court has reached in a

case to which he was a party," the court has jurisdiction and state law determines whether the defendant prevails under principles of preclusion. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (citation omitted); *see Davani v. Virginia Dep't of Transp.*, 434 F3d 712, 718 (4th Cir. 2006) (under *Exxon*, if a state-court loser who files suit in federal district court "is not challenging the state-court decision, the *Rooker–Feldman* doctrine does not apply").

Fossum contends that the *Rooker–Feldman* doctrine applies because the Plaintiffs seek relief that directly contradicts the *FEN* state action decisions that Minn. Stat. § 609.215, subd. 1 is constitutional. In response, the Plaintiffs acknowledge that their original Complaint ran afoul of the *Rooker–Feldman* doctrine because it sought a declaration holding that FEN's conviction under the challenged statute violated the First Amendment, and voiding FEN's conviction. [ECF No. 52 at 4; *see* ECF No. 1 at 5.] But the Plaintiffs omitted this "as applied" challenge when they amended their complaint. They now assert only a facial challenge to the statute, and seek an injunction prohibiting future enforcement of the statute to the extent it is held unconstitutional.[9] (2d Am. Compl. at 6–7.) Because the Plaintiffs' facial challenge to Minn. Stat. § 609.215 subd. 1 does not seek relief for the injury caused by the *FEN* state action, the *Rooker-Feldman* doctrine does not

---

[9] Fossum filed a Notice of No Reply in response to the Plaintiffs' opposition to his motion to dismiss. [ECF No. 55.] When questioned about the significance of this notice at the hearing, Fossum's counsel responded that he believed the *Rooker–Feldman* doctrine still applied, but provided no additional legal authority to support this position.

apply. *See Davani*, 434 F.3d at 719 (rejecting *Rooker–Feldman* argument where plaintiff's federal claims did not challenge the state decision and were therefore "independent" from that decision).

## V.     Collateral Estoppel

The Court finally turns to the argument that the Plaintiffs' claims are barred by collateral estoppel. Federal courts must accord the same preclusive effect to a state court judgment that it would receive in the courts of the state from which the judgment emerged. 28 U.S.C. § 1738; *Knutson v. City of Fargo*, 600 F.3d 992, 996 (8th Cir. 2010). Minnesota rules of collateral estoppel apply in federal court cases involving a prior Minnesota state court judgment. *See Laase v. County of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011). Those rules are well established: "[U]nder Minnesota law, collateral estoppel, or issue preclusion, precludes the relitigation of issues that are identical to issues previously litigated and that were necessary and essential to the prior judgment." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 933 (8th Cir. 2016) (citation omitted). Courts "do not apply collateral estoppel rigidly, but focus on whether an injustice would be worked upon the party against whom the estoppel is urged." *Mach v. Wells Concrete Prods. Co.*, 866 N.W.2d 921, 927 (Minn. 2015) (citation and internal quotations omitted). The party asserting collateral estoppel "has the burden to establish that the issue was actually presented and necessarily determined in the earlier action." *Id*. (citation and internal quotation marks omitted). Under Minnesota law, collateral estoppel applies when: "(1)

the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Id.* (citations omitted). The parties dispute three of these prongs.[10]

## A.    Identity of Issues

For collateral estoppel to apply, the issue must be identical to one in a prior adjudication. *Mach*, 866 N.W.2d at 927. The issue in this case is "the facial constitutionality of Minn. Stat. § 609.215, subd. 1 … under the First Amendment," since the word "assists" "has been authoritatively interpreted under Minnesota law" to "criminalize[] … 'speech' that 'enables' a 'suicide.'" (2d Am. Compl. ¶¶1, 2.) The Defendants claim that the issue of a facial challenge was decided in the *FEN* state action, while the Plaintiffs disagree, contending that the state courts "decided only whether they were bound by the 'enables' language of the Minnesota Supreme Court in *Melchert-Dinkel*, 844 N.W.2d 13." (Pls.' Resp. Br. at 17; *see id*. at 19–20 (stating that the issue before the courts in the *FEN* state action was "not the facial constitutionality of the Minnesota Statute, but whether *Melchert-Dinkel* precluded any consideration of that issue").)

---

[10] The parties do not dispute that a final adjudication on the merits occurred in the *FEN* state action.

The Plaintiffs are in error. There is no question that the issue raised in the *FEN* state action is the same as the issue raised here. In the *FEN* state action, the court explicitly addressed the following question of law: "Is Minn. Stat. § 609.215, subd. 1, facially unconstitutional under the First Amendment?" *Final Exit Network*, 889 N.W.2d at 302; *see id.* at 303 (holding that "[t]he statute's 'assists' provision … survives strict scrutiny and Final Exit's facial challenge to the statute."). The Plaintiffs raise this same issue in the instant action. (*See* 2d Am. Compl. ¶1.) The Plaintiffs here bring only a facial challenge to the statute, and because the *FEN* state action addressed that identical issue, the first element of collateral estoppel is satisfied.[11]

## B. Identity of Parties

### 1. Mutuality

Collateral estoppel also requires that "the estopped party [be] a party or in privity with a party to the prior adjudication." *Mach*, 866 N.W.2d at 927. The Plaintiffs contend that the Attorney General cannot benefit from collateral estoppel because he was not a party to the *FEN* state action. In support, they cite *Hauschildt v. Beckingham*, which states

---

[11] Were the Court presented with an as-applied challenge, of course, the analysis would be different. The Plaintiffs have dropped any as-applied challenge, and present only a facial challenge, the exact issue that was fully litigated before the Minnesota Court of Appeals in the *FEN* state action. It was FEN's decision to bring both an as-applied challenge and a facial challenge to the statute in state court. They could have brought the facial challenge to this Court at any time prior to the final adjudication on the merits in state court, but they did not. Their pursuit of the challenge in state court—and the state court's final decision—results in a collateral estoppel bar here.

that "[f]undamental to both [*res judicata* and collateral estoppel] doctrines is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction … cannot be disputed in a subsequent suit *between the same parties* or their privies." 686 N.W.2d 829, 837 (Minn. 2004) (citation omitted, emphasis added). But in that case, the parties were the same in the prior adjudication and current application of collateral estoppel. *See id*. Thus, *Hauschildt* did not address whether mutuality of parties is required for collateral estoppel. In *Aufderhar v. Data Dispatch, Inc.*, the Minnesota Supreme Court held that Minnesota courts do not require mutuality between the parties before invoking collateral estoppel. 452 N.W.2d 648, 650 (Minn. 1990). Moreover, courts applying Minnesota law continue to follow this rule after *Hauschildt*. *See, e.g., Pope v. Fed. Home Loan Mortg. Corp.*, 561 F. App'x 569, 573 (8th Cir. 2014) ("[U]nder Minnesota law, Freddie Mac may invoke the doctrine of issue preclusion for issues on which the Popes have previously fully litigated and lost … even though Freddie Mac was not a party to the prior litigation."); *State v. Alvarez*, 820 N.W.2d 601, 626 (Minn. Ct. App. 2012) ("Minnesota does not require mutuality of parties 'as a predicate to the invocation of collateral estoppel,' provided the other elements of the defense have been met) (quoting *Aufderhar,* 452 N.W.2d at 650). Thus, the Attorney General may rely on collateral estoppel even though he was not a party to the *FEN* state action.

### 2. Identity of Parties

The Defendants maintain that the "identity of parties" prong of collateral estoppel is satisfied because the Plaintiffs were either a party or were in privity with a party to the *FEN* state action. FEN was a party to the *FEN* state action, and thus clearly satisfies this prong.

Grossman and Schindler, however, were not a party in the *FEN* state action, and the question is whether they are in privity with FEN. "Privity exists where a non-party's 'interests are represented by a party to the action,' or where a party is 'otherwise so identified in interest with another that he represents the same legal right' with respect to a previously asserted claim." *Anderson v. City of St. Paul, Minn.*, 849 F.3d 773, 778 (8th Cir. 2017) (quoting *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011)). "It is not enough that two individuals both wish to prevail in litigation; their legal interests must be aligned to the point of being 'similarly affected by the outcome of a legal proceeding.'" *Id*. (quoting *Rucker*, 794 N.W.2d at 120). "[P]rivity has no *per se* definition and that privity determinations 'require[] a careful examination of the circumstances of each case.'" *Id*. (quoting *Rucker*, 794 N.W.2d at 118).

Grossman and Schindler are volunteer Exit Guides for FEN, but were not parties to the *FEN* state action. In this action, FEN, Grossman, and Schindler are being represented by Robert Rivas, FEN's general counsel. Mr. Rivas represented FEN in the

*FEN* state action.[12] *See Final Exit Network*, 2013 WL 5418170 (identifying Rivas as "General Counsel, Final Exit Network, Inc."); *Nonprime, LLC v. Walser Auto. Grp., LLC*, No. A09-1731, 2010 WL 2363331, at *7 (Minn. Ct. App. June 15, 2010) ("viewing counsel's representation as an additional circumstance that supports" the conclusion that parties were in privity). Courts have held that "if there is no conflict between the organization and its members, and if the organization provides adequate representation on its members' behalf, individual members not named in a lawsuit may be bound by the judgment won or lost by their organization." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1082 (9th Cir. 2003) (individual members of property owners association precluded from bringing subsequent action because association had already litigated the same claims in earlier suit); *see In re Pensioners & Beneficiaries of Former Minneapolis Police Relief Ass'n*, No. A13-1055, 2014 WL 274096, at *5 (Minn. Ct. App. Jan. 27, 2014) (finding MPRA members were in privity with MPRA entity where members revealed no conflict in interests among the MPRA members or between the MPRA entity and its members); *M.O.C.H.A. Society, Inc. v. City of Buffalo*, 689 F.3d 263, 285 (2d Cir. 2012) ("Despite the absence of complete privity between the named plaintiffs in the two actions, 'sufficient identity exists between the plaintiffs' for the district court to apply collateral estoppel."); *see generally Taylor v. Sturgell*, 553 U.S. 880, 906 (2008) ("preclusion is

---

[12] The Plaintiffs dispute the Attorney General's assertion that FEN represented Exit Guides in the *FEN* state action. (Pls.' Resp. Br. at 22-24.)

appropriate only if the putative agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication"); 18A Charles Alan Wright et al., Fed. Prac. & Proc. § 4456 (2d ed.) (explaining that courts have "allow[ed] representation by an association to bind members in matters that do not center on relationships within or through the association").

The Court finds that Grossman and Schindler are "so identified in interest" with FEN that FEN "represents the same legal right with respect to [the] claim previously asserted" in the *FEN* state action. *Anderson*, 849 F.3d at 778 (citation and quotation marks omitted). There is no dispute that the legal interests of FEN, Grossman and Schindler are aligned as they are "similarly affected by the outcome of a legal proceeding." *Id.* (citation omitted). No conflict exists between FEN on the one hand, and Grossman or Schindler on the other. As such, Grossman and Schindler are in privity with FEN as it relates to the judgment in the *FEN* state action.

## C.    Opportunity to Be Heard

Finally, for collateral estoppel to apply, the estopped party must have been given a full and fair opportunity to be heard on the adjudicated issue. *Mach,* 866 N.W.2d at 927. The issue on which collateral estoppel is to be applied "must be the same as that adjudicated in the prior action and it must have been necessary and essential to the resulting judgment in that action." *Hauschildt*, 686 N.W.2d at 837 (citations omitted).

Moreover, the issue "must have been distinctly contested and directly determined in the earlier adjudication for collateral estoppel to apply." *Id*. at 837–38.

The Plaintiffs acknowledge that the issue may have been "distinctly contested" because it was briefed and argued in the *FEN* state action. (Pls.' Resp. Br. at 20.) However, they assert that collateral estoppel does not apply because the issue was not "directly determined" by the state courts. (*Id*.) According to the Plaintiffs, the state courts decided they were bound by *Melchert-Dinkel*, and thus, did not address the facial constitutionality of the "enables" clause first created in *Melchert-Dinkel*. (*Id*. at 17.) The Plaintiffs cite no legal authority for their assertion that collateral estoppel should not apply because a state court decided an issue by applying the binding legal precedent. This Court has found none to support this position. *See generally Morgan v. United States Parole Comm'n*, 304 F. Supp. 3d 240, 251 (D.D.C. 2016) (holding that state court decision satisfied the fairness element of issue preclusion, noting "this Court sees nothing inherently unfair or untoward about the application of past precedent to address a constitutional question; after all, adherence to precedent is venerated practice of the state and federal courts.") (citing *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015) ("*Stare decisis*—in English, the idea that today's Court should stand by yesterday's decisions—is 'a foundation stone of the rule of law.'")). The Court finds that FEN was given a full and fair opportunity to be heard on the issue at hand in the *FEN* state action, and therefore, that FEN's facial

challenge claims against the Defendants are barred by collateral estoppel.[13] As such, the case must be dismissed.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, the Attorney General's motion to dismiss [ECF No. 22] is GRANTED, Backstrom's motion to dismiss [ECF No. 34] is GRANTED, and Fossum's motion to dismiss [ECF No. 42] is GRANTED. Accordingly, IT IS HEREBY ORDERED THAT this action be DISMISSED WITH PREJUDICE.


LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: February 22, 2019                                   BY THE COURT:

                                                           s/Nancy E. Brasel
                                                           Nancy E. Brasel
                                                           United States District Judge

---

[13] Because the Court finds that the Plaintiffs' claims must be dismissed based on lack of standing or collateral estoppel, it need not address the Defendants' remaining arguments regarding the official-capacity § 1983 claim and the merits of the facial challenge.